**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Garrison Property and Casualty Company, | No. CV-20-01730-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Cassandra Turnage, *et al.*, | |
| Defendants. | |

At issue is the Motion for Judgment on the Pleadings filed by Defendants/Counterclaimants Elvira and Raul Cano (Doc. 28, Cano Mot.), to which Plaintiff/Counterdefendant Garrison Property and Casualty Company filed a Response and Cross-Motion for Judgment on the Pleadings (Doc. 32, Garrison Mot.), the Canos filed a Reply to their Motion and Response to Garrison's Motion (Doc. 34, Cano Reply), and Garrison filed a Reply to its Motion (Doc. 35, Garrison Reply). Defendants Cassandra and Joseph Turnage joined in the Canos' Motion by filing their own Motion for Judgment on the Pleadings (Doc. 29), to which Garrison filed a Response and Cross-Motion for Judgment on the Pleadings (Doc. 33). The Court finds these matters appropriate for resolution without oral argument. LRCiv 7.2(f).

At the outset, the Court notes that Garrison filed a Notice of Supplemental Authority after the briefing on the pending Motions was complete to bring to the Court's attention decisions in the District of Arizona and Ninth Circuit that were over a year old and entered by those courts long before the briefing in this case. (Doc. 36.) The Canos filed a six-page

Response (Doc. 37) opposing Garrison's Notice, arguing the Notice was an improper sur-reply. Notices of supplemental authority are permitted to bring to the Court's attention a case decided after the briefing on a pending motion. Garrison's Notice was proper in that it made no new argument with regard to the newly-identified decisions of the court; it simply identified the decisions. But the decisions were not new, so the Notice was tardy and therefore improper. Because the Notice was not a sur-reply, the Canos could have spared some ink by simply moving the Court to strike or otherwise disregard the Notice as untimely. In any event, the Court did not consider Garrison's Notice in resolving the pending Motions.

I.   **BACKGROUND**

According to the First Amended Complaint (Doc. 14, FAC), Plaintiff Garrison Property and Casualty Company issued a Homeowners Policy that included liability insurance coverage to Defendants Cassandra and Joseph Turnage. Minor C.G. is the natural son of Mrs. Turnage, and she in turn is C.G.'s sole legal guardian. C.G. was a student at Riverview Elementary School, where Defendant Elvira Cano worked.[1] On April 13, 2018, C.G. and Mrs. Cano had a verbal altercation that upset C.G., and "he dropped his shoulder and ran at Mrs. Cano, knocking her to the ground," according to the Maricopa County Police Department report. (FAC ¶ 17.) The Police Department submitted charges of aggravated assault and assault to the Maricopa County Attorney. On account of the injuries Mrs. Cano suffered, on April 2, 2020, the Canos filed a complaint against the Turnages in Arizona state court, seeking damages.

The Turnages' Policy provides liability insurance coverage for damages caused by an "occurrence," which is "an accident, including continuous or repeated exposure to substantially the same harmful conditions, which results, during the policy period, in 'bodily injury' or 'property damage.'" (FAC ¶ 27.) Garrison claims that the Policy does not cover damages for C.G.'s altercation with Mrs. Cano because it was not an "occurrence" and because the Policy contains applicable exclusions, including for damages

---

[1] Defendant Raul Cano is Elvira's husband.

arising from an intended injury, a criminal act, or any actual, alleged or threatened physical or mental abuse. Garrison now seeks Declaratory Judgment under 28 U.S.C. § 2201 *et seq.* that it has no duty to defend or indemnify the Turnages under the Policy.

The Canos filed a First Amended Counterclaim (Doc. 21 at 8–13, Countercl.) that does not seek new relief, but instead seeks a denial of Garrison's request for relief by way of the opposite Declaratory Judgment as Garrison seeks, that is, that the Policy *does* provide liability insurance coverage to the Turnages for the damages arising from the altercation between C.G. and Mrs. Cano. In the Counterclaim, the Canos allege that C.G. is a special needs student that has a record of being destructive at school and has been diagnosed with multiple conditions, including anxiety, Oppositional Defiance Disorder, Attention Deficit/Hyperactivity Disorder, Disruptive Mood Dysregulation Disorder, and Autism. (Countercl. ¶ 6.) The Canos also allege that, as a result of the incident, C.G. was not adjudicated guilty of criminal charges in state court but rather, as a minor, "delinquent." The Canos attach to their Counterclaim a portion of a deposition of C.G., the Juvenile Court's setting of a disposition hearing, a portion of a deposition of Mrs. Turnage, the Maricopa County Attorney's notice of C.G.'s mental competency hearing, and a portion of a deposition of Mrs. Cano.[2] (Countercl. Exs. 1–5.)

The Canos now move for Judgment on the Pleadings against Garrison.[3] The Turnages filed their own motion joining in the Canos' motion without further briefing, and Garrison filed cross-motions against both the Canos and Turnages.

---

[2] Federal Rule of Civil Procedure 10(c) provides, "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." *See Markham v. Cnty. of Pima*, 821 Fed. App'x 716, 719 (9th Cir. 2020). Although the information contained in the Counterclaim's Exhibits appears to be evidence, the Court does not consider the Exhibits as evidence at this stage, but rather only as allegations by the Canos.

[3] It is not clear from the Canos' Motion whether they are moving for judgment on Garrison's Complaint—as the Motion explicitly states at one point (Cano Mot. at 16)—or their own Counterclaim—the allegations (and Exhibits) to which the Motion frequently refers (*e.g.*, Cano Mot. at 4–6). Because Garrison's claim and the Canos' counterclaim request the same (but opposite) relief, the Court will consider the parties' present Motions as requesting judgment on both the Complaint and Counterclaim.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "a party may move for judgment on the pleadings" after the pleadings are closed "but early enough not to delay trial." A motion for judgment on the pleadings should only be granted if "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Judgment on the pleadings is also proper when there is either a "lack of a cognizable legal theory" or the "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). In reviewing a Rule 12(c) motion, "all factual allegations in the complaint [must be accepted] as true and construe[d] . . . in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Judgment on the pleadings under Rule 12(c) is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1046 (9th Cir. 2006) (internal citations omitted).

A Rule 12(c) motion is functionally identical to a Rule 12(b) motion to dismiss for failure to state a claim, and the same legal standard applies to both motions. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Specifically, a complaint must include "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* Fed. R. Civ. P. 8(a). While a complaint does not need to "contain detailed factual allegations . . . it must plead enough facts to state a claim to relief that is plausible on its face." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. ANALYSIS

### A. Coverage for an "Occurrence"

The Canos first ask the Court to conclude from the pleadings that the Turnages' Policy covers damages from the altercation between C.G. and Mrs. Cano; Garrison asks the Court for the opposite. The Policy's Coverage E for Personal Liability is triggered by a claim against an insured for damages from bodily injury or property damage caused by an "occurrence" to which the coverage applies. (Doc. 15-2, FAC Ex. B, Policy at 25 of 34.) An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period" in bodily injury or property damage. (Policy at 2 of 34.)

The Arizona Court of Appeals has stated, "In interpreting an insurance contract, we look first to the policy language. We construe the provisions of an insurance policy according to their plain and ordinary meaning." *Lennar Corp. v. Auto-Owners Ins. Co.*, 151 P.3d 538, 546 (Ariz. Ct. App. 2007) (internal quotations and citations omitted). The Policy does not define "accident," but Arizona courts have defined an accident, as used in insurance policies, as "an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, often accompanied by a manifestation of force." *GRE Ins. Grp. v. Green*, 980 P.2d 963, 965 (Ariz. Ct. App. 1999). Garrison makes much of the fact that the Policy definition of "occurrence" does not include the provision that bodily injury or property damage be "neither expected nor intended," as many insurance policies do (along with the case law examining those policies). Garrison maintains that, because all allegations point to the fact that C.G.'s tackling of Mrs. Cano was intentional, it could not have been an accident, regardless of whether the resulting bodily injury was unexpected or unintended. (*E.g.*, Garrison Reply at 5–6.)

But the Arizona definition of "accident" in the insurance context, on which Garrison relies, begins with the word "undesigned." Black's Law Dictionary (7th ed.) defines

"design" as "1. A plan or a scheme. 2. Purpose or intention combined with a plan." So "undesigned" is equivalent to "without purpose or intention combined with a plan." Conversely, Garrison only prevails in its contention that the altercation at issue was not an "occurrence" under the Policy if, in tackling Mrs. Cano, C.G. had purpose or intention combined with a plan.

This, it strikes the Court, implicates the same consideration as multiple Arizona cases have addressed, that is, whether in engaging in an intentional act, the insured expected or intended the act to cause the damages. *Lennar Corp.*, 151 P.3d at 546–47 (interpreting policies both with and without the "neither expected nor intended" provision and finding that even if subcontractors intended to engage in construction in the way they did, that would not establish in and of itself that they intended the construction to cause property damage); *see also Farmers Ins. Co. v. Vagnozzi*, 675 P.2d 703 709 (Ariz. 1983) (holding that intent in the context of an "accident" under the policy was the subjective intent of the insured, in this instance when the insured "threw an elbow" in a basketball game).

C.G.'s subjective "purpose or intention combined with a plan" in tackling Mrs. Cano is a question of fact. While the allegations all point to the fact that C.G. dropped his shoulder and tackled Mrs. Cano on purpose, the Court cannot determine as a matter of law what C.G.'s plan was, that is, whether he intended to injure Mrs. Cano or intended something else. Because this is a subjective analysis—not one based on a reasonable person or similar standard—C.G.'s mental capacity and multiple behavioral and psychological conditions may all come into play in a factfinder's determination of his subjective intent and plan. As a result, neither the Canos nor Garrison are entitled to judgment on the pleadings as to whether the Policy covered the damages resulting from the altercation between C.G. and Mrs. Cano.

**B.  The Intended or Expected Injury Exclusion**

The Policy excludes coverage for "'bodily injury' which is reasonably expected or intended by any 'insured.'" (Policy at 26 of 34.)

> A two-prong inquiry is applied in Arizona to determine an insured's intent. First, intent is determined by looking at the insured's subjective desire to cause harm. An act, even though intentional, must be committed for the purpose of inflicting injury or harm. . . . Second, if the nature and circumstances of the insured's intentional act were such that harm was substantially certain to result, intent may be inferred as a matter of law.

*Phoenix Control Sys., Inc. v. Ins. Co. of N.A.*, 796 P.2d 463, 468 (Ariz. 1990). Garrison refers to the latter requirement as the *Steinmetz-Clark* presumption.

> The court in *Phoenix Control Systems* provided useful elaboration on this standard:

> Specific cases where the insured's subjective intent has been examined include self defense (*Meere*), striking a blow in a basketball game in an attempt to get the basketball (*Vagnozzi*), firing a shot at a liquor store clerk merely to frighten him while escaping (*Vanguard*), . . . and where the insured acts intentionally but lacks the mental capacity to act rationally (*Globe* . . . ). The common thread in these cases is that the insured defendants did not have a primary desire to injure the victim. Instead, the actions in the above cases resulted from attempts by the insured defendants to prevent harm to themselves, instances where the defendants did not control the risks, cases where defendants injure another in a contact sport where the players assume some risks, or situations where the insured could not control his actions.

*Id.* (internal citations omitted). From the parties' allegations, C.G.'s subjective intent falls in line with these instances and must be determined by a fact-finder.

As for the second prong, the *Steinmetz-Clark* presumption, "[c]ourts may infer intent as a matter of law where an insured's actions are unprovoked and the primary desire is to injure the victim." *Id.* As the Court stated above, whether C.G.'s action was unprovoked and what C.G.'s primary desire was in tackling Mrs. Cano cannot be determined as a matter of law from the parties' allegations in the FAC and Counterclaim, and this is particularly so because the allegations are far from sufficient for the Court to determine whether C.G. had "the mental capacity to act rationally." Accordingly, neither the Canos nor Garrison are entitled to judgment on the pleadings as to whether the Intended or Expected Injury Exclusion acts to exclude coverage here.

### C.     The Criminal Act Exclusion

The Policy also excludes coverage for acts "arising out of or caused by the commission of, attempting to flee from, or avoiding apprehension for a criminal act for which intent is a necessary element." (Policy at 28 of 34.) Here, although the allegations show that the Maricopa County Attorney's Office charged C.G. with aggravated assault and assault, it brought those charges to the Juvenile Court, where C.G. was adjudicated "delinquent." In the absence of Arizona case law on point, the Court agrees with the District of Colorado decision cited by the Canos interpreting Colorado law and concluding that a delinquent act is not the same as a "criminal act" as referred to in homeowners' policy exclusions. *See Allstate Ins. Co. v. Lewis*, 732 F. Supp. 1112, 1114 (Dist. Colo. 1990). Because Garrison does not point to other allegations that may implicate a criminal act, the Court finds that the Criminal Act Exclusion does not act to exclude coverage here.

### D.     The Physical Abuse Exclusion

Finally, the Policy excludes coverage for claims "[a]rising out of any actual, alleged or threatened physical abuse." (Policy at 28 of 34.) Black's Law Dictionary (7th ed.) defines "abuse" as "[p]hysical or mental maltreatment" and, in the case of abuse of the elderly, gives the examples of "deprivation of food or medication, beatings, oral assaults, and isolation."

The Canos argue that C.G.'s tackling of Mrs. Cano was not "physical abuse" under the Policy because, although there is no judicial consensus, "abuse" does not mean any conduct that causes physical harm but is characterized by an abusive quality such as an imbalance of power. (Cano Reply at 15–16.) On the other hand, Garrison argues that a single harmful act of physical violence is sufficient to constitute physical abuse, citing a Connecticut state court case. (Garrison Mot. at 15–16.) The Court agrees with the Canos to the extent they argue that "abuse," which contemplates "maltreatment," has a quality that distinguishes it from simple physical assault. This quality is evident in the Black's Law Dictionary examples of elder abuse that the Court listed above.

The question of whether the altercation between C.G. and Mrs. Cano was "physical abuse" under the Policy is a question for the factfinder, guided by the definitions provided here. Therefore, neither the Canos nor Garrison are entitled to judgment on the pleadings as to whether the Physical Abuse Exclusion acts to exclude coverage here.[4]

**IT IS THEREFORE ORDERED** granting in part and denying in part the Motion for Judgment on the Pleadings filed by Defendants/Counterclaimants Elvira and Raul Cano (Doc. 28) and the Motion for Judgment on the Pleadings filed by Defendants Cassandra and Joseph Turnage (Doc. 29). Defendants are entitled to judgment on the pleadings that the Criminal Act Exclusion does not act to exclude coverage under the Policy, but their Motions are otherwise denied.

**IT IS FURTHER ORDERED** denying the Motions for Judgment on the Pleadings filed by Plaintiff/Counterdefendant Garrison Property and Casualty Company (Docs. 32, 33.)

Dated this 17th day of September, 2021.

Honorable John J. Tuchi
United States District Judge

---

[4] Because the damages from C.G.'s conduct may be covered by the Policy, the Court will not dismiss the question of coverage for the derivative claim against the Turnages for negligence.