**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Garrison Property and Casualty Company, | No. CV-20-01730-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Cassandra Turnage, *et al.*, | |
| Defendants. | |

At issue is the Motion for Summary Judgment filed by Defendants/ Counterclaimants Elvira and Raul Cano (Doc. 59, Cano MSJ), to which Plaintiff/Counterdefendant Garrison Property and Casualty Company filed a Response and Cross-Motion for Summary Judgment (Doc. 63, Garrison MSJ), the Canos filed a Reply to their Motion and Response to Garrison's Motion (Doc. 66, Cano Reply), and Garrison filed a Reply to its Motion (Doc. 68, Garrison Reply). At the Court's request, the moving parties also filed a supplement comprised of relevant records from a related matter in the Juvenile Division of the Maricopa County Superior Court. (Docs. 70, 71.) The Court finds these matters appropriate for resolution without oral argument. LRCiv 7.2(f).

**I.  BACKGROUND**

Plaintiff Garrison Property and Casualty Company issued a Homeowners Policy that included liability insurance coverage to Defendants Cassandra and Joseph Turnage. Charles Goldurs ("Charlie") is the natural son of Mrs. Turnage, and she in turn has been Charlie's sole legal guardian. When Charlie was 14 years old, he was a student in the

Special Education Department of Dysart Unified School District, where Defendant Elvira Cano worked.[1] On April 13, 2018, Charlie and Mrs. Cano had a verbal altercation that upset Charlie, and "he dropped his shoulder and ran at Mrs. Cano, knocking her to the ground," according to the Maricopa County Police Department report.

The Police Department submitted charges of aggravated assault and assault to the Maricopa County Attorney. Commissioner Melody Harmon of the Juvenile Division of the Maricopa County Superior Court adjudicated these two counts together with four already-pending counts against Charlie arising from an earlier incident at the school. In May 2018, the Commissioner determined that Charlie was incompetent to stand trial, but by December 2018, he was restored to competency. In October 2019, Charlie entered into an agreement to plead delinquent on one count, namely, aggravated assault against a teacher/school employee under A.R.S. §§ 13-1204(A)(8)(d) and 13-1203(A)(1), whereby the remaining counts would be dismissed. The Commissioner accepted the plea agreement and adjudicated Charlie to be delinquent, finding that Charlie "knowingly, intelligently and voluntarily entered an admission pursuant to the plea agreement" and that "there is a factual basis for the admission [and] the admission is made with full knowledge of the possible consequences."

On account of the injuries Mrs. Cano suffered, on April 2, 2020, the Canos filed a complaint against the Turnages in Arizona state court, seeking damages. In turn, Garrison filed this action against the Turnages and Canos on September 3, 2020, seeking a declaratory judgment under 28 U.S.C. § 2201 *et seq.* ("Declaratory Judgment Act") that it has no duty to defend or indemnify the Turnages under the Policy.

The Turnages' Policy provides liability insurance coverage for damages caused by an "occurrence," which is "an accident, including continuous or repeated exposure to substantially the same harmful conditions, which results, during the policy period, in 'bodily injury' or 'property damage.'" (Doc. 15-2, FAC Ex. B, Policy at 2 of 34.) Garrison claims that the Policy does not cover damages for Charlie's altercation with Mrs. Cano

---

[1] Defendant Raul Cano is Elvira's husband.

because it was not an "occurrence" and because the Policy contains applicable exclusions, including for damages arising from an intended or expected injury or any actual, alleged or threatened physical or mental abuse.

The Canos filed a First Amended Counterclaim against Garrison (Doc. 21 at 8–13, Countercl.) that does not seek new relief, but rather seeks a denial of Garrison's request for relief by way of the opposite Declaratory Judgment as Garrison seeks, that is, that the Policy *does* provide liability insurance coverage to the Turnages for the damages arising from the altercation between Charlie and Mrs. Cano. The Canos claim that Charlie is a special needs student that has a record of being destructive at school and has been diagnosed with multiple conditions, including anxiety, Oppositional Defiance Disorder, Attention Deficit/Hyperactivity Disorder, Disruptive Mood Dysregulation Disorder, and Autism. The Canos argue that the altercation was an "occurrence" under the Policy and that no exclusions apply, and they also contend that the Turnages are covered under the Reasonable Expectations doctrine.

The Canos and Garrison now cross-move for summary judgment. The Turnages took no part in the briefing on the Cross-Motions for Summary Judgment.

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the

non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *United States v. Carter,* 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

### III. ANALYSIS

#### A. Coverage for an "Occurrence"

As the Court laid out in resolving the parties' cross-motions for judgment on the pleadings (Doc. 46, Order), the Policy's Coverage E for Personal Liability is triggered by a claim against an insured for damages from bodily injury or property damage caused by an "occurrence" to which the coverage applies. (Policy at 25 of 34.) An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period" in bodily injury or property damage. (Policy at 2 of 34.)

The Arizona Court of Appeals has stated, "In interpreting an insurance contract, we look first to the policy language. We construe the provisions of an insurance policy according to their plain and ordinary meaning." *Lennar Corp. v. Auto-Owners Ins. Co.*, 151 P.3d 538, 546 (Ariz. Ct. App. 2007) (internal quotations and citations omitted). The Policy does not define "accident," but Arizona courts have defined an accident, as used in insurance policies, as "an undesigned, sudden, and unexpected event, usually of an

afflictive or unfortunate character, often accompanied by a manifestation of force." *GRE Ins. Grp. v. Green*, 980 P.2d 963, 965 (Ariz. Ct. App. 1999). Black's Law Dictionary (7th ed.) defines "design" as "1. A plan or a scheme. 2. Purpose or intention combined with a plan." So, as the Court stated in its prior Order, "undesigned" is equivalent to "without purpose or intention combined with a plan." Garrison only prevails in its contention that the altercation at issue was not an "occurrence" under the Policy if, in tackling Mrs. Cano, Charlie had purpose or intention combined with a plan.

This implicates the same consideration as multiple Arizona cases have addressed, that is, whether in engaging in an intentional act, the insured expected or intended the act to cause the damages. *Lennar Corp.*, 151 P.3d at 546–47 (interpreting policies both with and without the "neither expected nor intended" provision and finding that even if subcontractors intended to engage in construction in the way they did, that would not establish in and of itself that they intended the construction to cause property damage); *see also Farmers Ins. Co. v. Vagnozzi*, 675 P.2d 703 709 (Ariz. 1983) (holding that intent in the context of an "accident" under the policy was the subjective intent of the insured, in this instance when the insured "threw an elbow" in a basketball game).

Charlie's subjective "purpose or intention combined with a plan" in tackling Mrs. Cano is a question of fact. In support of its argument that Charlie's act was not an "occurrence," Garrison points to Charlie's plea of delinquency, in which the Commissioner found there was a factual basis for Charlie's admission to the elements of the count against him, namely, aggravated assault under A.R.S. § 13-1204(A)(8)(d), which is premised on assault under § 13-1203(A)(1). The latter section provides that a "person commits assault by . . . [i]ntentionally, knowingly, or recklessly causing any physical injury to another person." A.R.S. § 13-1203(A)(1).

Garrison argues this is dispositive because Charlie admitted to committing such an assault.[2] The Juvenile Court records the parties provided (Doc. 71) do not reveal anything

---

[2] The principles of estoppel would not apply here, because, among other things, Charlie is not a party to this lawsuit.

- 5 -

more about Charlie's admission, such as a statement by Charlie that he intended to injure Mrs. Cano when he tackled her. As it is, under the terms of the assault statute, Charlie may have admitted to committing a reckless act. Black's Law Dictionary (7th ed.) defines "reckless" as: "Characterized by the creation of a substantial and unjustifiable risk of harm to others and by a conscious (and *sometimes deliberate*) disregard for or indifference to that risk; heedless; rash." (Emphasis added.) Indeed, Black's defines "recklessness" as: "Conduct whereby the actor *does not desire harmful consequence* but nonetheless foresees the possibility and consciously takes the risk." (Emphasis added.) Without clarity in the juvenile delinquency conviction of Charlie for incorrigible acts, the Court cannot conclude that a reckless (or heedless, or rash) act, which the assault statute contemplates, is, as a matter of law, a designed act, which would not qualify as an "occurrence" under the Policy.

Garrison cites a recent decision in this District to support its argument, but that case is distinguishable.[3] In *Am. Auto Ins. Co. v. Cerny*, No. CV-18-01597-PHX-SMB, 2019 WL 3068200 (D. Ariz. July 12, 2019), while Judge Brnovich examined the same assault statute at issue in this case, she based her decision in part on the fact that the insured party admitted to intentionally firing a gun at her husband, albeit in self-defense. The act of intentionally firing a gun aimed at the victim is, as a matter of law, an act designed to injure the victim, even if done in self-defense. Charlie's subjective design in tackling Mrs. Cano is, by contrast, not clear from the act itself, as the Court stated in its prior Order (Doc. 46).[4]

Thus, while Charlie's admission to committing an assault under A.R.S. § 13-1203(A)(1) as part of his delinquency plea may be some evidence of his design in tackling Mrs. Cano, it is not dispositive. For their part, the Canos point to testimony Charlie gave

---

[3] Garrison also cites *State Auto Insurance Cos. v. Ramirez*, No. CV-18-195-TUC-FRZ, 2020 WL 10963874 (D. Ariz. Nov. 20, 2020) in support of its argument, but in that case Judge Zapata interpreted an admission under an entirely different statute providing that the injurious act was committed "intentionally or knowingly" but not recklessly.

[4] A.R.S. § 13-807—which Judge Brnovich cited but did not need to apply in that case—clearly does not apply to this case. That statute precludes a criminal defendant convicted of an offense from denying the factual basis of the offense in a later civil case brought by the injured person (or the State) against the criminal defendant. By its terms, the statute does not apply here because (1) this is not an action brought against Charlie, and (2) Charlie was a juvenile delinquent, not criminal, defendant.

- 6 -

at various points after the incident as well as the testimony of his mother, Mrs. Turnage. In conjunction with the state court action, Charlie testified that he remembered "running into" Mrs. Cano because he was angry. (Doc. 64, Garrison SOF ¶¶ 21-24.) In his deposition in conjunction with this action, Charlie did not remember the incident at all, but testified he would not plan or scheme to injure Mrs. Cano. (Doc. 60, Cano SOF ¶¶ 28-29.) Mrs. Turnage testified similarly, stating Charlie's action was impulsive and not intended. (Cano SOF 11, 13, 24, 35.) The Canos' countervailing evidence is sufficient to create a genuine issue as to what Charlie's intent and plan was in tackling Mrs. Cano.

The Canos also proffer evidence of Charlie's psychological and behavioral issues—including impulsive, destructive behavior and trouble focusing—for which he is treated by psychologists and therapists and takes numerous medications. (Cano SOF ¶¶ 8-12.) Garrison counters with evidence that Charlie performs adequately on standardized tests, demonstrating that he is not intellectually disabled. (Garrison SOF ¶¶ 4-5.) This evidence simply demonstrates that a genuine issue of fact remains as to whether, and to what level, Charlie was able to govern his conduct in accordance with reason at the time he tackled Mrs. Cano—a necessary finding in a factfinder's determination what Charlie's design or plan was when he tackled Mrs. Cano. For all these reasons, neither the Canos nor Garrison are entitled to summary judgment as to whether there was an "occurrence" such that the Policy covered the damages resulting from the altercation between Charlie and Mrs. Cano.[5]

**B.     The Intended or Expected Injury Exclusion**

The Court's analysis of the Intended or Expected Injury Exclusion tracks the Court's prior Order. (Doc. 46.) The Policy excludes coverage for "'bodily injury' which is reasonably expected or intended by any 'insured.'" (Policy at 26 of 34.)

---

[5] In its research, the Court uncovered a number of state court cases with similar facts in which those courts reached the same conclusion. For example, in *Sanders v. Nationwide Mutual Insurance Co.*, an Ohio appellate court concluded that a juvenile's delinquency admission was admissible and relevant to determine whether the juvenile's act was intentional and thus not covered by an insurance policy, but it was not dispositive; summary judgment was not appropriate because there was countervailing evidence, including that the juvenile may not have had the mental capacity to intend the harm. 2011 WL 1584427 (Ohio Ct. App. Apr. 21, 2011).

> A two-prong inquiry is applied in Arizona to determine an insured's intent. First, intent is determined by looking at the insured's subjective desire to cause harm. An act, even though intentional, must be committed for the purpose of inflicting injury or harm. . . . Second, if the nature and circumstances of the insured's intentional act were such that harm was substantially certain to result, intent may be inferred as a matter of law.

*Phoenix Control Sys., Inc. v. Ins. Co. of N.A.*, 796 P.2d 463, 468 (Ariz. 1990). Garrison refers to the latter requirement as the *Steinmetz-Clark* presumption.

The court in *Phoenix Control Systems* provided useful elaboration on this standard:

> Specific cases where the insured's subjective intent has been examined include self defense (*Meere*), striking a blow in a basketball game in an attempt to get the basketball (*Vagnozzi*), firing a shot at a liquor store clerk merely to frighten him while escaping (*Vanguard*), . . . and where the insured acts intentionally but lacks the mental capacity to act rationally (*Globe* . . . ). The common thread in these cases is that the insured defendants did not have a primary desire to injure the victim. Instead, the actions in the above cases resulted from attempts by the insured defendants to prevent harm to themselves, instances where the defendants did not control the risks, cases where defendants injure another in a contact sport where the players assume some risks, or situations where the insured could not control his actions.

*Id.* (internal citations omitted). From the parties' evidence, as outlined above, Charlie's subjective intent falls in line with these instances and must be determined by a fact-finder.

As for the second prong, the *Steinmetz-Clark* presumption, "[c]ourts may infer intent as a matter of law where an insured's actions are unprovoked and the primary desire is to injure the victim." *Id.* Whether Charlie's action was unprovoked and what Charlie's primary desire was in tackling Mrs. Cano cannot be determined as a matter of law from the parties' evidence, and this is particularly so because the evidence creates a genuine dispute of fact as to whether Charlie had "the mental capacity to act rationally." Accordingly, neither the Canos nor Garrison are entitled to summary judgment as to whether the Intended or Expected Injury Exclusion acts to exclude coverage here.

### C. The Physical Abuse Exclusion

The Court similarly concludes that the parties' evidence does not resolve as a matter of law whether the Physical Abuse Exclusion applies to the altercation between Charlie

and Mrs. Cano. The Policy excludes coverage for claims "[a]rising out of any actual, alleged or threatened physical abuse." (Policy at 28 of 34.) Black's Law Dictionary (7th ed.) defines "abuse" as "[p]hysical or mental maltreatment" and, in the case of abuse of the elderly, gives the examples of "deprivation of food or medication, beatings, oral assaults, and isolation."

The Canos argue that Charlie's tackling of Mrs. Cano was not "physical abuse" under the Policy because, although there is no judicial consensus, "abuse" does not mean any conduct that causes physical harm but is characterized by an abusive quality such as an imbalance of power. On the other hand, Garrison argues that a single harmful act of physical violence on a school employee, when taken in the context of yelling obscenities, is sufficient to constitute abuse. As the Court stated in its prior Order (Doc. 46), the Court agrees with the Canos to the extent they argue that "abuse," which contemplates "maltreatment," has a quality that distinguishes it from simple physical assault. This quality is evident in the Black's Law Dictionary examples of elder abuse that the Court listed above.

While the Canos emphasize that Charlie's act was a single impulsive act, Garrison emphasizes evidence of the lead-up to the act, including Mrs. Cano's report that Charlie yelled obscenities at her (Garrison SOF ¶ 64). The evidence indicates again that there remains a genuine dispute of fact as to whether the altercation between Charlie and Mrs. Cano was "physical abuse" under the Policy. Therefore, neither the Canos nor Garrison are entitled to summary judgment as to whether the Physical Abuse Exclusion acts to exclude coverage here.

### D. The Reasonable Expectations Doctrine

Finally, the Canos contend that they are entitled to summary judgment on the Policy coverage issue under the Reasonable Expectations doctrine. This doctrine allows a court, under limited circumstances, to refrain from enforcing unambiguous boilerplate terms of a standardized insurance agreement. *Gordinier v. Aetna Cas. & Sur. Co.*, 742 P.2d 277, 283 (Ariz. 1987). The doctrine does not apply just because the insured experiences the "fervent

hope usually engendered by loss." *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 395 (Ariz. 1984). Rather, it applies when (1) the insured had a reasonable expectation of coverage, and (2) the drafter "had reason to believe that the adhering party would not have assented to the particular term had he or she known of its presence." *Id.* at 396. The drafter's "reason to believe" may arise from prior negotiations or other inferences drawn from the circumstances. *State Farm Fire & Cas. Co. v. Grabowski*, 150 P.3d 275, 281 (Ariz. Ct. App. 2007).

The evidence is not sufficient for the Court to determine that this is an instance in which the Reasonable Expectations Doctrine would apply. The Canos point only to the fact that Mrs. Turnage is a high school graduate and Air Force officer who was untrained in the law, and she now states she expected the incident between Charlie and Mrs. Cano to be covered by the Policy. From this limited and almost entirely irrelevant evidence, the Court can draw no inference that Mrs. Turnage would not have agreed to the Policy had she known this type of incident was not covered. *See Darner*, 682 P.2d at 395; *Grabowski*, 150 P.3d at 281. Garrison is thus entitled to summary judgment that the Reasonable Expectations does not apply here.

**IT IS THEREFORE ORDERED** denying the Motion for Summary Judgment filed by Defendants/Counterclaimants Elvira and Raul Cano (Doc. 59).

**IT IS FURTHER ORDERED** granting in part and denying in part Plaintiff/Counterdefendant Garrison Property and Casualty Company's Cross-Motion for Summary Judgment (Doc. 63). The Reasonable Expectations doctrine does not apply to provide coverage in this case, but Garrison's Motion is denied in all other respects.

**IT IS FURTHER ORDERED** that this case will proceed to trial. The Court will set a pre-trial status conference by separate Order.

Dated this 30th day of September, 2022.

Honorable John J. Tuchi
United States District Judge